Jason A. McNeill (9711)
   mcneill@mvmlegal.com
Brian E. Lahti (16298)
   lahti@mvmlegal.com
**MCNEILL | VON MAACK**
175 South Main Street, Suite 1050
Salt Lake City, Utah 84111
Telephone: 801.823.6464

Attorneys for Plaintiffs, Fluent Home LTD
Fluent Home LLC

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **FLUENT HOME LTD, a Canadian corporation, and FLUENT HOME, LLC, a Delaware limited liability company,** | **COMPLAINT** |
| | **AND** |
| **Plaintiffs,** | **DEMAND FOR JURY TRIAL** |
| **v.** | |
| **JACK ELBAUM,** **an individual, CHAD BINGHAM, an individual** | |
| | **Case No.:  2:18-cv-00570** |
| **Defendants.** | **Honorable Paul M. Warner** |

Plaintiffs Fluent Home Ltd. and Fluent Home, LLC. (collectively "Plaintiffs" or "Fluent Home") through counsel MCNEILL VON MAACK, allege and complain against Jack Elbaum ("Elbaum") and Chad Bingham ("Bingham")(collectively, "Defendants") as follows:

## PARTIES

1.      Plaintiff Fluent Home Ltd. is a Canadian corporation with its principal place of business at 7319 1004th Street, Edmonton, AB T6E4B9.

2.      Plaintiff Fluent Home, LLC is a Delaware limited liability company having its principal place of business at 3400 North 1200 West, Lehi, Utah 84043.

3.      Defendant Jack Elbaum is an individual, who, upon information and belief, resides in Collin County, Texas.

4.      Defendant Chad Bingham is an individual, who, upon information and belief, resides in Salt Lake County, Utah.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves violations of the Defend Trade Secret Act, 18 U.S.C. § 1832.  Further, this Court has jurisdiction over Plaintiffs' related state law claims under 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction over Defendants because they committed tortious acts in this District, much of the conduct alleged occurred in this District while they were employed and resided in this District, they have directed infringing conduct into this District, and has otherwise established jurisdictionally sufficient contacts within this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)-(3) because Defendants' contacts with Utah are sufficient to create personal jurisdiction over Defendants in Utah and because a substantial part of the events giving rise to the claims in this action occurred within this District.

## FACTUAL ALLEGATIONS

**A.      Fluent Home Has Detailed Policies Designed To Protect Its Proprietary Information, Confidential Information, And Trade Secret Information+ From Becoming Known To The Public.**

8.      In or about December 2010, Fluent Home entered into a Master Services Agreement ("MSA") with NPEC, LLC ("NPEC") to provide it with various consulting, management and related services.

9.      NPEC was solely owned by Elbaum.

10.     Pursuant to the MSA, NPEC agreed to keep confidential all of Fluent Home's proprietary, confidential and trade secret information.

11.     Fluent Home uses numerous security provisions to protect to its proprietary information, confidential information, and trade secrets.  For example, Fluent Home's facilities use key card access protection.  Further, Fluent Home's databases, networks, repositories, and servers are password protected and Fluent Home only granted access to those representatives who were on a need to know basis.  Fluent Home also protects the documents located on its systems by active directory policies and permissions.

12.     In addition, Fluent Home required NPEC to ensure NPEC's own employees were subject to confidentiality obligations to ensure Fluent Home information accessed by NPEC employees were kept confidential.

13.     To that end, all individuals who helped Fluent Home develop its technology was required to execute confidentiality agreements and to acknowledge their willingness to adhere to a code of employee conduct as set forth in a NPEC Handbook.  Further, Fluent Home takes reasonable efforts to mark its proprietary information with its corresponding level of confidentiality.

14.     Specific to this instance, upon execution of the NPEC Handbook, NPEC employees who worked on developing Fluent Home technology agreed that:

Employee acknowledges, understands and agrees that during the course of Employee's employment with NPEC, LLC, employee will acquire or have access to confidential and proprietary information of or about NPEC, LLC and its clients. Employee acknowledges, understands and agrees that this information is confidential and proprietary and shall not be revealed to anyone for any purpose or reason unless legally required to be. Employee agrees that revealing this confidential and/or proprietary information would cause substantial damages to NPEC, LLC and its clients. This proprietary information includes but is not limited to emails, documents, computer generated documents, computer programs, etc. Employee understands that if he/she were to use this proprietary and/or confidential information in any manner other than an authorized use, that it will cause the Company extreme damage and the Company reserves the right to take any and all necessary legal action to prevent said use and/or to seek remedies for said use once it occurs including but not limited to injunctive relief, without bond, a restraining order, damages, etc. to address a violation of this provision.

15.     Fluent Home also uses and executes non-disclosure agreements with other entities and individuals that it collaborates with to protect its proprietary information, confidential information, and trade secrets.

16.     Fluent Home further informs its partners of the secret nature of its products and information, as well as the duty to maintain that proprietary information as secret.

17.     Fluent Home had its employees receive, review and execute Employment Handbook supplements, which specifically provided for confidentiality and intellectual property obligations, including the obligation that the employees agree to keep Fluent Home information and technology confidential, not to be revealed to others.

> **B.     Fluent Home Seeks To Research, Develop, Manufacture, Install, and Service State-Of-The-Art Security Systems And Retains Jack Elbaum To Further This Goal.**

18.     Fluent Home's corporate mission seeks to save lives and improve life quality through home automation.  Fluent Home seeks to fulfill its mission primarily through

developing, installing, and servicing state-of-the-art security, technology, energy management, convenience and mobile applications for the home.

19.     As President of NPEC, Elbaum was entrusted with a position of confidence and trust with Fluent Home.  To that end, Elbaum assisted in building Fluent Home's back office support.  Elbaum was also responsible for customizing the back office support system and compiling a Fluent Home back office support team.  Elbaum also built and controlled access to Fluent Home's repositories, databases, and servers.  Elbaum eventually became a shareholder in Fluent Home Ltd and an officer of Fluent Home LLC.

20.     At all times Elbaum worked with Fluent Home, he agreed to keep Fluent Home's proprietary information, confidential information, and trade secrets confidential and refrain from use of or further disclosure of Fluent Home's secret information.

21.     In late 2011, Elbaum's work for Fluent Home included conceiving of the new state-of-the-art home security system called "Gabriel."  Fluent Home has always maintained the secrecy of Gabriel, treating Gabriel as confidential and trade secret information of Fluent Home.

22.     The Gabriel home security system and panel is a complex system that has hardware and software components, engineering, coding and related information that required significant funding, research and development.  The researched and developed hardware and software components are valuable, not publicly known and Fluent Home derives benefits from them not being known to the public or the security industry.

23.     This research and development was conducted by Fluent Home's employees and consulting team and funded by Fluent Home.  Fluent Home's investment in the Gabriel home

security system and panel has been significant with Fluent Home expending almost $2 million in costs for research and development of Gabriel.

24.     At all times, Fluent Home has employed adequate security measures to protect the secrecy of both the hardware and the software researched and developed for the Gabriel home security system and panel, including the use of restricted key card access, siloe systems and databases that are password protected, active directory policies and permissions, and the marking of proprietary information.

25.     Elbaum acted as a team leader for Fluent Home in the research and development of the Gabriel home security system and panel.  His extensive work on the Gabriel home security system and panel provided him with specific knowledge and access to all the plans, specifications, business and engineering information related to the Gabriel home security system and panel, including plans, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, and codes of the Gabriel home security system.

26.     Elbaum knew that the proprietary information and confidential information of Gabriel were a result of substantial development and investment, were secret, had substantial economic value, and that he had a duty to maintain the secrecy and confidentiality of the Gabriel home security system and panel.

> ### C.     As Fluent Home's Research and Development Manager, Chad Bingham Gains Access to Fluent Home's Confidential and Trade Secret Information.

27.     On or about February 25, 2015, Bingham agreed to Fluent Home's written offer to become Fluent Home's Research and Development Manager.

28.     In such role, he was given access to and responsibilities concerning Fluent Home's confidential and trade secret information, including without limitation Fluent Home's developer and consulting team, software and hardware, product development, features and functionality, performance and research results, and offsite vendors and development teams.

29.     In accepting his position with Fluent Home, and on February 25, 2015, Bingham entered into and an agreement wherein he agreed that he would not divulge or disclose any confidential information he acquired or accessed from Fluent Homes.

30.     In addition, on or about March 2, 2015, Bingham received, reviewed, and executed a copy of Fluent Home's Employee Handbook.  In doing so, he specifically acknowledged and agreed that he would acquire and access confidential and trade secret information, that he would keep such information confidential and not disclose it to any third party, and that any disclosure by him would cause Fluent Home substantial damages that would entitled them to injunctive relief.

31.     The February 25, 2015 agreement and March 2, 2015 agreements are collectively referred to as the "Bingham Non-Disclosure Agreements."

32.     In addition to the obligations of the Bingham Non-Disclosure Agreements, Bingham held a special position of trust and confidence with Fluent Home serving as its Research and Development Manager, which position specifically contemplated Bingham being entrusted with special access and knowledge regarding Fluent Home's confidential and trade secret information in return for his promise to keep such information strictly confidential.

33.     In the course of his employment as the Fluent Home's Research and Development Manager, Bingham was entrusted with assisting Fluent Home and Elbuam in developing the Gabriel home security system and panel identified above.

34.     At all times relevant, Bingham knew and understood that Gabriel, and all the information he learned, accessed, maintained, and developed concerning Gabriel, belonged to Fluent Home, and constituted Fluent Home's confidential and trade secret information.

35.     At all times relevant, Bingham knew and understood that he was forbidden from disclosing Gabriel to third-parties.

> **D.     Elbaum Departs From Fluent Home And Takes Fluent Home's Confidential and Trade Secret Information.**

36.     In or about January 2015, Elbaum and NPEC's relationship with Fluent Home was terminated.

37.     In connection with the termination of their relationship, and on June 30, 2015, the parties entered into a written Agreement providing for, among other things, the formal cancellation of Elbaum's shares in Fluent Home, the written termination of the MSA with NPEC, Elbaum's formal resignation of all positions held with Fluent Homes, several restrictive covenants, and various representations and warranties in favor of Fluent Home ("Departure Agreement").

38.     In the Departure Agreement, Elbaum represented and warranted to Fluent Home that Fluent Home owned all rights and interest in the Gabriel home security system and panel, and that Elbaum disclaimed having any rights or interest in any past, present or future value generated by or in Gabriel.

39.     Elbaum further agreed that Elbaum would have no interest or claim in Fluent Home's assets or other interests.

40.     As of the date of the Departure Agreement, the Gabriel home security system and panel was nearly complete, and therefore of great value to Fluent Home.

### E.     Bingham Leaves Fluent Home, Taking Fluent Home Confidential and Trade Secret Information.

41.     On or about March 19, 2015, Bingham resigned from Fluent Home, and began working directly with Elbaum.

42.     Upon information and belief, Bingham quit Fluent Home having already agreed and conspired with Elbaum to work together to take secret possession of Fluent Home's Gabriel home security system and panel, and to unlawfully try and sell it to Fluent Home's competitors.

### F.     Elbaum and Bingham Are Improperly Attempting To Sell Fluent Home's Gabriel Security System As Their Own To Competitors.

43.     After their relationship with Fluent Home was terminated, Elbaum and Bingham went on to unlawfully access and maintain Fluent Home's proprietary, confidential, and trade secret information, including the confidential and trade secret information related to the Gabriel home security system and panel.

44.     Elbaum and Bingham knew at all times they were forbidden from accessing or storing such information, and took steps to actively conceal the fact that they had taken and were maintaining Fluent Home's proprietary, confidential and trade secret information.

45.     In or about April 2018, Elbaum and Bingham attended the ISC West conference held in Las Vegas, Nevada.

46.     While at ISC West, Elbaum and Bingham contacted Michael Casperson of Crorzar.  Crozar provides consumers with home security products, such as motion sensors and smart door contacts.

47.     During such time, Casperson was looking to acquire a home security system and panel.

48.     Elbaum and Bingham falsely represented to Casperson that they owned a security system and panel that they wanted to sell to Casperson.  Elbaum represented to Casperson that the home security system and panel that he owned was "95% complete."

49.     At all times, the home security system and panel that Elbaum and Bingham sought to sell to Casperson was Fluent Home's Gabriel home security system and panel.

50.     Not knowing about Fluent Home's ownership of Gabriel, Casperson agreed to meet with Elbaum and Bingham about Gabriel.  At such meeting, Elbaum and Bingham brought a laptop, and began showing Casperson on the laptop screen certain of the files and images of the engineering drawings related to Gabriel, and reiterated to Casperson that they owned and desired to sell Gabriel to him.

51.     Casperson noticed, however, that some of the pictures and images appeared to say "Fluent" on it; Casperson became concerned that the system Elbaum and Bingham were attempting to sell him was not their property, but rather Fluent's property.

52.     Suspicious, Casperson reached out to Fluent Home.  Casperson's conversation with Fluent Home confirmed Casperson's concerns – that the system that Elbaum and Bingham were actively trying to sell Casperson was Fluent Home's Gabriel home security system and panel; and that the files, drawings and engineering that Elbaum and Bingham were disclosing to

Casperson included confidential and trade secret information owned by, and stolen from, Fluent Home.

53.     Elbaum and Bingham currently and unlawfully maintain on Elbaum's laptop and/or Bingham's laptop, and/or in other locations or other electronic devices, certain personal and valuable property including the confidential and trade secret information and files related to Gabriel, and potentially other proprietary information that belongs to Fluent Home.

54.     Elbaum and Bingham have no legal right or ownership of Fluent Home's property, including the Gabriel home security system and panel and all files related thereto.

55.     Elbaum and Bingham know that they have no legal right to sell the Gabriel home security system and panel, that they had a duty to maintain the secrecy of the Gabriel home security system and panel, and that they had unlawfully obtained the property, proprietary information, confidential information, and trade secrets of Gabriel.

56.     Elbaum and Bingham has not paid Fluent Home for the property that belongs to it that Elbaum and Bingham unlawfully possess.  Elbaum and Bingham used their position of trust and confidence to access and steal such property, information and files, and now seeks to profit therefrom.

57.     The property belonging to Fluent Home—that Elbaum and Bingham unlawfully possess—is valuable.

58.     Elbaum and Bingham's unlawful possession of Fluent Home's property, including the confidential and trade secret information related to Gabriel, poses a substantial ongoing risk of harm to Fluent Home, including that Elbaum or Bingham may convey it to third parties such

as Fluent Home competitors or other third parties who may benefit from Fluent Home's

property, including the Gabriel home security system and panel.

### FIRST CAUSE OF ACTION
### (Misappropriation of Trade Secrets under Utah Uniform Trade Secrets Act, U.C.A. § 13-24-2 - against All Defendants)

59.     Fluent Home hereby incorporates by reference the allegations contained in the

above paragraphs.

60.     Fluent Home owns proprietary information, confidential information, and trade

secrets of the Gabriel home security system and panel that provides Fluent Home with a

commercial advantage because it is not generally known in the industry in which Fluent Home

does business, nor is it readily ascertainable by proper means.

61.     Fluent Home's proprietary information, confidential information and trade secrets

of the Gabriel home security system and panel includes, but is not limited to, plans, program

devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs,

and codes of the Gabriel home security system and panel.  This information was developed only

after Fluent Home expended substantial cost and effort over a period of years.

62.     Fluent Home has a protectable interest in the Gabriel home security system and

panel's proprietary information, confidential information, and trade secrets.

63.     Fluent Home has taken reasonable steps to protect the Gabriel home security

system and panel's proprietary information, confidential information, and trade secrets, including

without limitation, the use of restricted key card access, siloe systems and databases that are

password protected and limited to Fluent Employees actively working on Gabriel, active

directory policies and permissions, and the marking of proprietary information of Gabriel.

64.     Elbaum and Bingham knew or had reason to know that the Gabriel home security system and panel's proprietary information, confidential information, and trade secrets are protected.  Further, Elbaum and Bingham knew or had reason to know that the Gabriel home security system and panel's proprietary information, confidential information, and trade secrets were communicated to him under an express duty not to disclose or use the information.

65.     Elbaum and Bingham, upon their departure from Fluent Home, used improper means to appropriate the Gabriel home security system and panel's proprietary information, confidential information, and trade secrets for their own use and benefit.  Indeed, Elbaum and Bingham are currently and actively disclosing the Gabriel home security system and panel and related files and specifications, to the security industry by improperly attempting to sell Gabriel. The most recently known act of misappropriate occurred in or about April 2018.

66.     As a direct and proximate result of the wrongful conduct of Elbaum and Bingham, Fluent Home has suffered, and continues to suffer, damages in an amount that is not now presently ascertainable, but will be established at trial.

67.     The misappropriation of the Gabriel home security system and panel's proprietary information, confidential information, and trade secrets was willful and malicious, entitling Fluent Home to double exemplary damages and reasonable attorneys' fees.

68.     Defendants will continue acts of misappropriation and Fluent Home will be irreparably harmed thereby unless such activities are enjoined by this Court.

## SECOND CAUSE OF ACTION
### (Violation of Federal Defend Trade Secret Act – Against All Defendants)

69.     Fluent Home hereby incorporates by reference the allegations contained in the above paragraphs.

70.     The actions of Defendants as described above constitutes violations of one or more provisions of the Defend Trade Secret Act of 2016 ("DTSA"), 18 U.S.C. § 1863.

71.     The DTSA provides in relevant part:

An owner of a trade secret that is misappropriated may bring a civil action under the subsection if the trade secret is related to a product or service used in, or intended for use in, interstate foreign commerce.
18 U.S.C. § 1836(b)(3)(A).

72.     The DTSA provides that "a court may grant an injunction – to prevent any actual or threatened misappropriation described in paragraph (1) on such terms as the court deems reasonable . . ."  18 U.S.C. § 1836(b)(3)(A).

73.     By engaging in the conduct described above, Defendants have intentionally, willfully and maliciously misappropriated, threatened to misappropriate, misused, revealed and disclosed trade secrets and confidential and proprietary information or knowledge of Fluent Home, and will continue to do so, in violation of the confidential relationship between Elbaum and Bingham with Fluent Home.  Specifically, Defendants have intentionally, willfully and maliciously misappropriated, threatened to misappropriate, misused, revealed and disclosed trade secrets and confidential and proprietary information and knowledge of Fluent Home's Gabriel home security system and panel.

74.     Fluent Home's proprietary information, confidential information and trade secrets of the Gabriel home security system and panel includes, but is not limited to, plans, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, and codes of the Gabriel home security system and panel.  This information was developed only after Fluent Home expended substantial cost and effort over a period of years.

14

75.    Fluent Home has a protectable interest in the Gabriel home security system and panel's proprietary information, confidential information, and trade secrets pursuant to the DTSA.

76.    Fluent Home has taken reasonable steps to protect the Gabriel home security system and panel's proprietary information, confidential information, and trade secrets, including without limitation, the use of restricted key card access, siloe systems and databases that are password protected and limited to Fluent Employees actively working on Gabriel, active directory policies and permissions, and the marking of proprietary information of Gabriel.

77.    Fluent Home intends the Gabriel home security system and panel for use in interstate or foreign commerce.

78.    Defendants knew or had reason to know that the Gabriel home security system and panel's proprietary information, confidential information, and trade secrets are protected. Further, Defendants knew or had reason to know that the Gabriel home security system and panel's proprietary information, confidential information, and trade secrets were communicated to Defendants under an express duty not to disclose or use the information.

79.    Defendants, upon departure from Fluent Home, used improper means to appropriate the Gabriel home security system and panel's proprietary information, confidential information, and trade secrets for their own use and benefit.

80.    Defendants are actively disclosing the Gabriel Home security system and panel, including all confidential and trade secret components thereof, to the security industry by improperly attempting to unlawfully disclose and sell Gabriel.

81.     As a direct and proximate result of the wrongful conduct of Defendants, Fluent Home has suffered, and continues to suffer, damages in an amount that is not now presently ascertainable, but will be established at trial.

82.     The misappropriation by Defendants of the Gabriel home security system and panel's proprietary information, confidential information, and trade secrets was willful and malicious, entitling Fluent Home to double exemplary damages and reasonable attorneys' fees.

83.     Defendants will continue their acts of misappropriation and Fluent Home will be irreparably harmed thereby unless such activities are enjoined by this Court.

## THIRD CAUSE OF ACTION
### (Breach of Contract – against Elbaum)

84.     Fluent Home hereby incorporates by reference the allegations contained in the above paragraphs.

85.     The Elbaum Departure Agreement is a valid and enforceable contract between Fluent Home and Elbaum.

86.     Fluent Home fully performed their obligations under the Elbaum Departure Agreement.

87.     Elbaum had agreed pursuant to the Elbaum Departure Agreement that Fluent Home owned all rights related to Gabriel and that Elbaum had no rights to Gabriel and no right to claim the value of Fluent Home's assets or interests.

88.     Elbaum materially breached the Elbaum Departure Agreement by holding himself out as the owner of Gabriel and seeking to profit therefrom.

89.     Elbaum's breach directly and proximately caused Fluent Home to suffer damages, and continues to suffer, damages in an amount that is not now presently ascertainable, but will be established at trial.

90.     Pursuant to the Agreement, Elbaum is obligated to pay Fluent Home for all costs, expenses and damages resulting from such breach, including attorney fees, in an amount to be determined.

### FOURTH CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing - against Elbaum)**

91.     Fluent Home hereby incorporates by reference the allegations contained in the above paragraphs.

92.     The Elbaum Departure Agreement is a valid and enforceable contract between Fluent Home and Elbaum.

93.     Fluent Home fully performed their obligations under the Elbaum Departure Agreement.

94.     The Elbaum Departure Agreement included an implied covenant by Elbaum to deal fairly and in good faith in a manner consistent with the agreed common purpose and justified expectations of Fluent Home.

95.     Implicit in Elbaum's agreement that he had no right or interest in Gabriel was the obligation not to try and monetize Gabriel to third parties to the detriment of Fluent Home.

96.     Elbaum materially breached the implied covenant of good faith and fair dealing by frustrating Fluent Home's ability to protect its Gabriel home security system and panel, as well as controlling the sale and offer for sale of the Gabriel home security system and panel.

97.     As a direct and proximate result of Elbaum's breach of the implied covenant of good faith and fair dealing, Fluent Home has suffered damages, and continues to suffer, damages in an amount that is not now presently ascertainable, but will be established at trial.

### FIFTH CAUSE OF ACTION
**(Breach of Contract – against Bingham)**

98.     Fluent Home hereby incorporates by reference the allegations contained in the above paragraphs.

99.     The Bingham Non-Disclosure Agreements are valid and enforceable contracts between Fluent Home and Bingham.

100.    Fluent Home fully performed their obligations under the Bingham Non-Disclosure Agreements.

101.    Bingham had agreed pursuant to the Bingham Non-Disclosure Agreements to keep Fluent Home confidential information, including the information related to the Gabriel system, as confidential, and not to misappropriate it or disclose it to third-parties.

102.    Bingham materially breached the Bingham Non-Disclosure Agreements by, after resigning from Fluent Homes, taking, accessing, maintaining, and disclosing Fluent Home's confidential and trade secret information; and, by holding himself or Elbaum out as the owner of Gabriel and seeking to sell and profit therefrom.

103.    Bingham's breach directly and proximately caused Fluent Home to suffer damages, and continues to suffer, damages in an amount that is not now presently ascertainable, but will be established at trial.

104.    Pursuant to the Bingham Non-Disclosure Agreement, Bingham is obligated to pay Fluent Home for all costs, expenses and damages resulting from such breach, including attorney fees, in an amount to be determined.

## SIXTH CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing - against Bingham)

105.    Fluent Home hereby incorporates by reference the allegations contained in the above paragraphs.

106.    The Bingham Non-Disclosure Agreement is a valid and enforceable contract between Fluent Home and Bingham.

107.    Fluent Home fully performed their obligations under the Bingham Non-Disclosure Agreement.

108.    The Bingham Non-Disclosure Agreement includes an implied covenant by Bingham to deal fairly and in good faith in a manner consistent with the agreed common purpose and justified expectations of Fluent Home.

109.    Implicit in Bingham's agreement was the obligation not to try and monetize Gabriel to third-parties to the detriment of Fluent Home.

110.    Gabriel materially breached the implied covenant of good faith and fair dealing by frustrating Fluent Home's ability to protect its Gabriel home security system and panel, as well as controlling the sale and offer for sale of the Gabriel home security system and panel.

111.    As a direct and proximate result of Bingham breach of the implied covenant of good faith and fair dealing, Fluent Home has suffered damages, and continues to suffer, damages in an amount that is not now presently ascertainable, but will be established at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion – Against All Defendants)

112.    Fluent Home hereby incorporates by reference the allegations contained in the above paragraphs.

113.    Defendants have willfully interfered with chattel belonging to Fluent Home, specifically the Gabriel home security system and panel and all information related thereto that does not constitute trade secret information and the personal property of Fluent Homes that does not constitute trade secret information of which Fluent Home has full legal and beneficial ownership.

114.    Defendants' interference was without lawful justification, and deprived Fluent Home of the exclusive use, possession, and/or control of the Gabriel home security system and panel.

115.    As a direct and proximate cause of the conversion, Fluent Home has been damaged in an amount to be proven at trial, along with pre- and post-verdict interest, costs and attorney's fees.

116.    Defendants' conduct is willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of Fluent Home, entitling Fluent Home to an award of punitive damages against Defendants under Utah Code Ann. § 78B-8-201.

## EIGHTH CAUSE OF ACTION
### (Civil Conspiracy - Against All Defendants)

117.    Fluent Home hereby incorporates by reference the allegations contained in the above paragraphs.

118.    Defendants have conspired and worked together, reaching a meeting of the minds to accomplish the unlawful objective of secretly stealing and reselling to Fluent Home's competitors, the personal property of Fluent Homes that does not constitute trade secret information, and have carried out attempts to do so.

119.    As a direct and proximate cause of the conspiracy, Fluent Home has been damaged in an amount to be proven at trial, along with pre- and post-verdict interest, costs and attorney's fees.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment, in the alternative – against Defendants)

120.    Fluent Home hereby incorporates by reference the allegations contained in the above paragraphs.

121.    Fluent Home conferred benefits on Elbaum and Bingham in the form of the use of Gabriel home security system and panel.

122.    Elbaum and Bingham have an appreciation and knowledge of the benefit, and they continue to retain such benefits.

123.    Their retention of such benefits is inequitable without paying Fluent Home for the value thereof.

124.    Fluent Home is entitled to recover from Defendants damages which exceed 75,000.00, and which will be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, Fluent Home respectfully requests the Court enter judgment against Elbaum and Bingham as follows:

1.      Judgment in favor of Fluent Home and against Elbaum and Bingham on each cause of action as requested;

2.      Elbaum and Bingham pay Fluent Home enhanced damages for willful and malicious misappropriation of Fluent Home's trade secrets;

3.      Permanently enjoin Elbaum and Bingham from manufacturing, copying, offering for sale, or selling any home security system and panel that is substantially identical to the Gabriel home security system and panel;

4.      That Elbaum and Bingham pay damages suffered by Fluent Home as a result of their foregoing acts in an amount to be proven at trial, but to exceed $75,000.00;

5.      Award punitive damages against Elbaum and Bingham under Utah Code Ann. § 78B-8-201;

6.      Award Fluent Home attorney fees and costs;

7.      Award Fluent Home pre- and post-judgment interest on any monetary award made part of the judgment against Defendants; and

8.      Grant to Fluent Home such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Fluent Home demands a trial by jury on all matters herein so triable.

DATED this 17th day of July 2018.

MCNEILL | VON MAACK

Jason A. McNeill
Brian E. Lahti
*Attorneys for Plaintiffs, Fluent Home LTD*
*Fluent Home LLC*